

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00585-CV

**IN THE INTEREST OF A.M.T.**, a Child

From the 225th Judicial District Court, Bexar County, Texas
Trial Court No. 2018-PA-01238
Honorable Richard Garcia, Judge Presiding

Opinion by:  Luz Elena D. Chapa, Justice

Sitting:  Rebeca C. Martinez, Justice
Luz Elena D. Chapa, Justice
Beth Watkins, Justice

Delivered and Filed: December 18, 2019

AFFIRMED

A.M.T.'s parents, Danielle and Deron, appeal a final order appointing A.M.T.'s paternal grandmother, A.B., as A.M.T.'s sole permanent managing conservator and appointing them possessory conservators.[1] We affirm the trial court's order.

### PROCEDURAL BACKGROUND

In June 2018, the Texas Department of Family and Protective Services filed an original petition for A.M.T.'s protection and conservatorship, and for termination of Danielle's and Deron's parental rights. A.M.T. was removed and placed with his paternal grandmother, A.B. A.B. did not file a petition in intervention and was not otherwise made a party to the proceedings.

---

[1] To protect the identity of minor children, we refer to the appellants by their names and the child and his other relatives by their initials or other references. *See* TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

The case proceeded to a bench trial. At trial, the Department no longer sought the termination of Danielle's and Deron's parental rights. Instead, the Department asked the trial court to appoint A.B. as A.M.T.'s sole permanent managing conservator and Danielle and Deron as possessory conservators. Several witnesses—including two caseworkers, A.B., Deron's sister, Danielle, and Deron—testified. After taking the case under advisement, the trial court signed a final order granting the relief the Department requested at trial. Danielle and Deron appeal.

## ISSUES ON APPEAL

In her appellant's brief, Danielle raises two issues. First, she argues the trial court erred by appointing a nonparty as A.M.T.'s sole permanent managing conservator. Second, she argues the trial court abused its discretion by appointing her a possessory conservator. In his appellant's brief, Deron similarly argues the trial court abused its discretion in finding that appointing A.B. as sole permanent managing conservator is in A.M.T.'s best interest.

## A. Appointment of Nonparty as Sole Permanent Managing Conservator

This court recently held that when a trial court does not order termination of a parent-child relationship, the "trial court [has] authority to appoint a nonparty managing conservator." *In re M.I.A.*, No. 04-19-00227-CV, 2019 WL 5030241, at *10 (Tex. App.—San Antonio Oct. 9, 2019, no pet. h.). Furthermore, trial by consent "can cure lack of pleading." *Bos v. Smith*, 556 S.W.3d 293, 306 (Tex. 2018). A.B. testified, without objection, that she was seeking managing conservatorship. The Department also requested this relief without objection. Because the parties litigated the appointment of A.B. as managing conservator without objection, the issue was tried by consent. *See id.* We overrule this issue.

## B. Conservatorship

Danielle and Deron also argue the trial court abused its discretion in appointing them as joint possessory conservators.

*1. Applicable Law & Standard of Review*

In a termination proceeding, "If the court does not order termination of the parent-child relationship, the court shall: (1) deny the petition; or (2) render any order in the best interest of the child." TEX. FAM. CODE § 161.205; *see M.I.A.*, 2019 WL 5030241, at \*10. Generally, a child's parents must be appointed as joint managing conservators because there "is a rebuttable presumption that the appointment of the parents of a child as joint managing conservators is in the best interest of the child." TEX. FAM. CODE § 153.131(b). The court need not appoint a parent as managing conservator if "appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development." *Id.* § 153.131(a). "Conservatorship determinations . . . are subject to review only for abuse of discretion, and may be reversed only if the decision is arbitrary and unreasonable." *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007).

In considering a child's best interests, we may consider the non-exclusive factors set forth by the Supreme Court of Texas in *Holley v. Adams*: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. 544 S.W.2d 367, 371–72 (Tex. 1976); *accord In re A.K.*, 487 S.W.3d 679, 685–86 (Tex. App.—San Antonio 2016, no pet.).

*2. The Evidence at Trial*

The evidence at trial showed Danielle and Deron are married and have been together for thirteen years. They have three children: A.M.T. and A.M.T.'s two older siblings, J. and D.J., who were six and five, respectively, at the time of trial. A few years before A.M.T. was born, A.B. and Deron's sister went to the family's mobile home and found J. and D.J., ages one and two at that time, unsupervised. A.B. and Deron's sister testified Deron was in jail and Danielle was not home. Deron's sister described what she saw:

> [W]hen we did change the diaper of [D.J.], I mean, he had rash. I mean, like I don't know the last time his diaper had been changed. And not only that, it was people inside of the mobile home that were laid out on the couch that was oblivious to anything going on. They were left with complete strangers and they were under the influence of something.

A.B. also testified J. was trying to change D.J.'s diaper. A.B. and Deron's sister removed J. and D.J. from the trailer home, and they went to live with A.B.

After A.M.T. was born, J. and D.J. were returned to Danielle and Deron under the Department's supervision. One of the Department's caseworkers, Venus Alvarez, testified about concerns she had from two unannounced visits. When she arrived for one visit, J. and D.J. were on the roof of the house, unsupervised. When she arrived for the other unannounced visit, Danielle and Deron were arguing or fighting. Alvarez testified the children told her that Danielle put her "hands on" Deron, demonstrating what the children described to her; that Danielle had "her two fists put together with her arms up around chin level pushing forward." According to Alvarez, the children expressed fears of getting spanked. The Department removed A.M.T., who was an infant at the time, and again placed him with A.B. D.J. and J.'s conservatorship was established by an order from a court in Comal County, and they were living with A.B.

The evidence at trial also showed Danielle and Deron had a history of drug use, domestic violence, incarcerations, inconsistent visits with A.M.T., unstable housing, and lack of

employment. Deron's sister testified Deron had a history of drug use. Alvarez testified Deron tested negative throughout the case, but he started refusing drug tests. Another Department caseworker, Jennifer Munoz, testified Danielle tested positive for opiates while the case was pending. Danielle also admitted she had positive drug test results.

Munoz testified Danielle and Deron had both been arrested for domestic violence. Munoz also stated that a few weeks before trial, Danielle came into her office with a black eye. Danielle's explanation was that D.J. threw a football and it hit her in the eye. Deron's sister described an incident when Dannielle and Deron had an "all out brawl":

> [A]n all out brawl took place. I mean, they both were beating each other. That's not joking. They were. To the point where my husband had to get in between them to intervene and it wouldn't stop until it got to the point where we said we're going to -- stop or the cops are going to come.

She explained the injuries from the altercation included bruises and "busted lips." In addition to the arrests for domestic violence, several witnesses, including Danielle and Deron, testified Danielle and Deron had prior arrest histories, for theft by check and failure to appear. Danielle's most recent arrest was within the year before trial, while the underlying case was pending.

The evidence also showed Danielle and Deron had moved residences numerous times and occasionally lived at shelters. Deron testified he had recently obtained employment and arranged to sign a lease on a townhome at 1:00 p.m. on the day of trial. Danielle testified she was unemployed. According to Munoz, from the time the case was filed in June 2018 until April 2019, Danielle and Deron had only four or five visits with A.M.T. A.B. testified that during visits, Deron would interact with the children, but Danielle would be on her phone. A.B. also explained, "As far as I know, when I got [A.M.T], [Danielle and Deron had] seen him once and then they moved to Dallas for about six months or so. And never came to visit, never contacted him. They didn't call. The visits didn't start back again until about March."

The evidence showed that before A.M.T. was removed, Danielle and Deron provided for many of A.M.T's basic needs, such as food, water, and shelter, and they had engaged in the required services in their family service plans. However, Munoz expressed concerns about whether Danielle and Deron had learned from their classes, such as domestic violence, because of Danielle's black eye. Munoz testified that after Danielle tested positive for opiates, she re-engaged in counseling, but was then discharged for non-attendance.

The evidence further showed A.M.T. was doing well in A.B.'s care. Alvarez testified A.B.'s home was a good placement because the children have grown and thrived, and A.B. has provided a stable, structured environment. Munoz testified A.B. was a licensed kinship caregiver. A.B. testified she was a teacher and could care for children and A.M.T. should remain with her and his siblings. Deron's sister also testified she helps A.B. take care of the children:

> [W]henever she needs . . . I help to watch them. I also help her go to doctor's appointments. I'm the coparent, per se, kind of, like when -- for the school, when there's things that's going on at the school, we go and eat with the kids or we pick them up when they need to be or things like that.

She also testified the children had improved in A.B.'s care.

*3. Analysis*

This case started as a termination proceeding, but the trial court did not order termination of the parent–child relationship. The trial court was therefore required to either deny the Department's petition or render an order in A.M.T.'s best interest. *See* TEX. FAM. CODE § 161.205; *M.I.A.*, 2019 WL 5030241, at *10. The trial court rendered an order it found was in A.M.T.'s best interest: appointing A.B. as sole permanent managing conservator and Danielle and Deron as possessory conservators. The statutory presumption in favor of appointing Danielle and Deron managing conservators was rebutted by the evidence showing appointment would not be in A.M.T.'s best interest because such an appointment would significantly impair the A.M.T.'s

physical health or emotional development. *See* TEX. FAM. CODE § 153.131(a), (b). The evidence shows Danielle and Deron's history of drug use, domestic violence, incarcerations, inconsistent visits with A.M.T., unstable housing, and lack of employment, and shows A.M.T. is improving and thriving in A.B.'s care. *Cf. In re D.M.*, 452 S.W.3d 462, 473 (Tex. App.—San Antonio 2014, no pet.) (considering evidence of drug use, criminal activity, incarceration, domestic violence, and other endangering conduct as relevant to a child's best interest). We therefore cannot say the trial court's conservatorship determinations are arbitrary or unreasonable. *See J.A.J.*, 243 S.W.3d at 616. We hold the trial court did not abuse its discretion. *See id.*

## CONCLUSION

We affirm the trial court's order.

Luz Elena D. Chapa, Justice